UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT DAVID BECKLEY,<br>    Plaintiff | )<br>)<br>)<br>) |
| v. | )<br>)   DOCKET NO: 04-11906-RWZ |
| BROWNING FERRIS INDUSTRIES<br>("BFI") OF NORTH AMERICA,<br>THOMAS H. VAN WEELEN,CEO BFI OF<br>NORTH AMERICA, IN HIS<br>PROFESSIONAL AND INDIVIDUAL<br>CAPACITIES,<br>PETER HUTCHINGS, TRUCK DRIVER<br>BFI, NORTH AMERICA, IN HIS<br>PROFESSIONAL AND INDIVIDUAL<br>CAPACITIES,<br>GINO DUGAN, BFI GENERAL<br>MANAGER IN HIS PROFESSIONAL<br>AND INDIVIDUAL,<br>JOHN DOE,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

Now comes the **Defendant Thomas H. Van Weelden** (incorrectly named in the

Plaintiff's complaint as "Thomas H. Van Weelen"), and respectfully moves this

Honorable Court to dismiss **all of plaintiff's claims (Counts I-VIII)** against him

pursuant to Fed. R. Civ P. 12(b)(2) and 12(b)(6). **Defendants, Browning Ferris**

**Industries of North America (so-called) ("BFI")** and **Gino Dugan,** move to dismiss **all**

**claims (Counts I-VIII)** against them pursuant to Fed. R. Civ P. 12(b)(6). **Defendant**

**Peter Hutchings** moves to dismiss **Counts I and VI** against him pursuant to Fed. R. Civ.

P. 12(b)(6) and has answered the remaining claims (Counts II, III, IV, V, VII and VIII)

933210v1

against him.

## I.    **BACKGROUND**

Plaintiff is a pro se litigant and a prisoner at the Nashua Street Jail in Boston, Massachusetts. (*See* Plaintiff's Complaint at ¶3, attached as Exhibit "A"). Plaintiff filed the instant lawsuit on April 21, 2004, nearly two years after the alleged incident. Defendants' first notice of the claim was service of the Complaint.

Defendants contest most of the factual allegations set forth in plaintiff's Complaint. For purposes of the instant Motion, however, the following is a brief synopsis of plaintiff's contentions.

Plaintiff alleges that Defendant, Peter Hutchings was employed as a driver for Defendant, Browning Ferris Industries of North America (so-called). (*See* Exhibit "A " at ¶4 ). Plaintiff contends Gino Duggan was Hutchings' supervisor and employed by the Company. (*See* Exhibit "A " at ¶4 ). Plaintiff claims Defendant Thomas Van Weelden was the chief executive officer of the Company. (*See* Exhibit "A " at ¶4 ).

Plaintiff states he was involved in a motor vehicle accident on the evening of May 10, 2002 near the corner of Dartmouth Street and Stuart Street in Boston, Massachusetts. (*See* Exhibit "A " at ¶11 ). Defendant Peter Hutchings, the truck driver, was merely a witness to the motor vehicle accident. (*See* Exhibit "A " at ¶13 ).

Nonetheless, Plaintiff claims defendant Hutchings "exited his truck and approached the plaintiff, grabbed him aggressively on the arm and stated 'If you don't get the ___ out of here now, I will get the gun in my truck, and I'm not afraid to use it.'" (*See* Exhibit "A" at ¶14). Plaintiff claims he was "in fear for his life" and therefore returned to his motor vehicle and fled the scene of the accident. (*See* Exhibit "A" at ¶16).

2

Plaintiff admits he drove erratically and illegally, failing to stop for traffic control signals and traveling the wrong direction on one-way streets, allegedly in an attempt to "lose" defendant Peter Hutchings. (*See* Exhibit A, ¶¶16 and 18). Plaintiff claims Peter Hutchings was chasing him in a garbage truck. (*See* Exhibit A, ¶¶16 and 18).

Plaintiff claims he stopped his motor vehicle on Boylston Street, at which time a Boston Police Officer, Joseph King, shot him in the head. (*See* Exhibit "A" at ¶¶22 and 23). Plaintiff contends he sustained numerous injuries as a result of the gunshot wound to his head, for which he now seeks to recover damages from the Defendants. (*See* Exhibit "A" at ¶¶24, 25 and 26).

## II.    AS TO MR. VAN WEELDEN, THIS COURT HAS NO PERSONAL JURISDICTION, AND THEREFORE, ALL OF PLAINTIFF'S CLAIMS AGAINST HIM SHOULD BE DISMISSED PURSUANT TO FED.R. CIV. P. 12(b)(2).

### A.    Standard for Dismissal Pursuant to Fed.R.Civ.P. 12(b)(2)

A non-resident defendant such as Mr. Van Weelden, an individual who resides and works outside of the Commonwealth[1], cannot be subjected to the personal jurisdiction of this Court except under very limited circumstances.(*See* Exhibit "A" at ¶4). Confronted with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), Plaintiff Beckley bears the burden of proving this Court's personal jurisdiction over the non-resident defendant.[2] Callahan v. Harvest Board Int'l, Inc., 138 F. Supp 2d 147, 157 (D. Mass. 2001). The following analysis is based on this Court's subject matter jurisdiction

---

[1] While the Complaint makes no specific allegation as to Mr.Van Weelden's residence, the return of service indicates that Mr. Van Weelden was served with the Complaint at his place of business, 15880 N. Greenway-Hayden Loop, Suite 100, Scottsdale, Arizona.

[2] Most of the factual allegations set forth in plaintiff's complaint are false. However, for purposes of this motion and, more specifically, this argument under the jurisdictional analysis, defendant states plaintiff's factual allegations in a light most favorable to the plaintiff.

933210v1

pursuant to diversity of citizenship.[3] See Back Bay Farm, LLC v. Collucio, 230 F.Supp 2d 176, 187-88 (D. Mass. 2002)(Court may not base its exercise of jurisdiction on claims which are not viable).

**B.     Mr Van Weelden does not have sufficient minimum contacts with the state of Massachusetts to justify this Court's exercise of personal jurisdiction over him.**

In a frivolous and transparent attempt to harass Mr. Van Weelden, Plaintiff has named him as a co-defendant, even though Mr. Van Weelden had no involvement, whatsoever, in the alleged incident and there is no personal jurisdiction over him.

To assert personal jurisdiction over a non-resident defendant, federal courts must engage in a two-part analysis. Foster-Miller, Inc. v. Babcock & Wilcox, Can. 46 F. 3d 138, 144 (1st Cir. 1995). First, the court must determine if the long-arm statute of the state in which it sits confers jurisdiction over the defendant. Moldflow Corp. v. Simcon, Inc., 296 F. Supp 2d 34, 39(D. Mass. 2003). Next, the court must decide if the exercise of jurisdiction over the defendant comports with the requirements of Constitutional Due Process. Id.

In the Commonwealth, the Massachusetts long arm-statute, Mass. Gen. Laws ch. 223A, governs personal jurisdiction over a non-resident defendant. The Supreme Judicial

---

[3] As is argued below in Sections III, IV, and VI Plaintiff's claims against all of the Defendants pursuant to §1983 and the Fourteenth Amendment must be dismissed for failure to state a claim for which relief may be granted. However, when a District Court's subject matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the Court's personal jurisdiction are drawn in the first instance by reference to the due process clause of the Fifth Amendment. Lorelei Corp. v. County of Guadalupe, 940 F.2d 717,719(1st Cir. 1991). In such cases, the Constitution requires only that the defendant have the requisite "minimum contacts" with the United States as a whole, rather than with the particular forum state. Cook v. McLaughlin , 917 F. Supp.79, 83 (D. Mass.1996). A District Court's personal jurisdiction is also limited by Fed.R.Civ.P.4(k)(1)(A) which provides in relevant part that when service is made outside the boundaries of the state in which the District Court sits, such service is effective to establish personal jurisdiction over the defendant only where the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in [that] state" Fed.R.Civ.P.4(k)(1)(A). Therefore, regardless of whether this Court's subject matter jurisdiction is based on diversity of citizenship or federal question, the relevant analysis must begin with the Massachusetts law governing personal jurisdiction, Massachusetts General Laws 223A, §3.

4

Court of Massachusetts has interpreted the Massachusetts Long-Arm statute[4] "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Daynard v. Ness, Motley, 290 F. 3d 42, 52(1st Cir. 2002), citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). Because the scope of the Massachusetts' long-arm statute is coextensive with federal due process requirements, the following analysis is focused on the jurisdictional limitations of the Due Process Clause of the Constitution of the United States. See Moldflow Corp., 296 F. Supp at 39.

A Court may exercise either general or specific personal jurisdiction over a non-resident defendant. Daynard, 290 F. 3d at 51; Mass. Sch. of Law, 142 F. 3d 26, 34(1st Cir. 1998). If a defendant has continuous and systematic contacts with a state, a court in that state may exercise general jurisdiction over any cause of action against the defendant, regardless of whether the litigation directly arises out of the defendant's contact with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416(1984); Cambridge Literary Prop., Ltd. v. W. Goebel Porzellanfabrik, 295 F. 3d 59, 63(1st. Cir. 2002).

In the instant complaint, plaintiff has not (and cannot) allege any facts to support an allegation that Mr.Van Weelden, had continuous and systematic contacts with the Commonwealth. Helicopteros, 466 U.S. at 414-16. This Court's jurisdiction over a corporate officer may not be based on jurisdiction over the corporation itself. Interface

---

[4] The Massachusetts Long Arm Statute states in relevant part: "A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth;...(c)causing tortious injury by an act or omission in this commonwealth;[or](d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business , or engages in any in any other persistent course of conduct or derives substantial revenue..." Mass.Gen.Laws ch. 223A, §3(a),(c)-(d).

933210v1

Group-Massachusetts, LLC v. Rosen, 256 F.Supp.2d 103,105 (D. Mass. 2003); Yankee

Group, Inc. v. Yamashita, 678 F. Supp. 20, 22 (D. Mass. 1988). Therefore, the named

corporate defendant's[5] contacts with Massachusetts can not be imputed to Mr. Van

Weelden. See Cambridge Literary Prop., Ltd, 295 F. 3d at 65. Plaintiff has failed to

proffer the requisite facts to substantiate an independent basis for this Court exercising

general personal jurisdiction over Mr. Van Weelden. See Interface, 256 F.Supp.2d at 105.

In the absence of general jurisdiction, a court's power over a non-resident

defendant depends upon the existence of specific jurisdiction. Specific jurisdiction

requires that the plaintiff's cause of action arise directly out of, or relate to, the

defendant's contacts with the forum state. The First Circuit considers the following three

requirements in determining whether a Court's exercise of specific personal jurisdiction

over an out-of-state defendant comports with due process: (1) the plaintiff's underlying

claims in the litigation must directly arise out of, or relate to, defendant's contacts with

the state (2) the defendant must have purposeful minimum contacts with the state, thereby

invoking the benefits and protections of that state's laws and making the defendant's

involuntary presence before the state's courts foreseeable and (3) the court's exercise of

jurisdiction must be reasonable under the circumstances[6]. E.g. Sawtelle v. Farrell, 70 F.

3d 1381, 1389 (1st. Cir. 1995), citing World-Wide Volksagen Corp. v. Woodson, 444

U.S. 286, 291 (1980); Cambridge Literary Prop., Ltd, 295 F. 3d at 65.

---

[5] Plaintiff has not (and can not) assert any facts to substantiate his claim that Mr. Van Weelden is the "CEO" or chief executive officer of the named corporate defendant, "Browning Ferris Industries of North America." (so-called). (See Exhibit "A" at Paragraph 4).

[6] In analyzing this component, the court typically must weigh five elements, often referred to as the "gestalt factors": (1) the defendant's burden of appearing; (2)the form state's interest in adjudicating the dispute; (3)the plaintiff's interest in obtaining convenient and effective relief; (4)the judicial system's interest in obtaining the most effective resolution of the controversy and (5) the common interests of all sovereigns in promoting substantive social policies. Foster-Miller, 46 F.3d at 150, Comer v. Comer, 295 F. Supp.2d 201,207 (1st. Cir. 2003).

Applying this standard to the facts of this case, this Court must decline to assert specific personal jurisdiction over Mr. Van Weelden. First, as outlined above, this Court cannot exercise personal jurisdiction over Mr. Van Weelden based on any potential jurisdiction over the corporation which allegedly employs him. See Interface, 256 F.Supp.2d at 105. Second, plaintiff has not (and cannot) allege any specific facts to causally link Mr. Van Weelden's activities within the Commonwealth, if any, to plaintiff's claims against him. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73(1985). Third, plaintiff has not set forth any facts to demonstrate Mr. Van Weelden had sufficient minimum contacts with the Commonwealth or "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable."

Mr. Van Weelden is not subject to the personal jurisdiction of this Court, and therefore, all of plaintiff's claims against Thomas H. Van Weelden should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**III.     AS TO DEFENDANT VAN WEELDEN, PLAINTIFF'S CLAIMS AGAINST HIM ARE BASED SOLELY ON THE THEORY OF RESPONDEAT SUPERIOR, AND, THEREFORE, SHOULD BE DISMISSED PURSUANT TO FED.R.CIV.P. 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.**

**A.     Standard for Dismissal Pursuant to Fed.R. Civ. P. 12(b)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is warranted when it appears that the plaintiff cannot prove a set of facts in support of his claim that would entitle him to relief. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997). When evaluating the sufficiency of a complaint, the Court must accept as true the factual allegations of the complaint, but should not accept plaintiff's unsupported conclusions or interpretations of law. Mass. Sch. of Law at Andover, Inc., 142 F.3d at 40; see also Stein v. Royal Bank of

7

Canada, 239 F.3d 389, 392 (1st Cir. 2001). "To survive a motion to dismiss, a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner, 129 F.3d at 25, quoting, Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Accepting all of the factual allegations contained in Beckley's Complaint as true, plaintiff has failed to state sufficient claims against Mr. Van Weelden for which relief may be granted, and therefore, all of plaintiff's claims against Mr. Van Weelden should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

B.    **As a matter of law, Defendant Van Weelden cannot be held vicariously liable to plaintiff for Defendant Hutchings' alleged conduct.**

All of Plaintiff Beckley's claims against Mr. Van Weelden stem from his assertion that Defendant Hutchings "was acting under the direction and control of…" Mr. Van Weelden at the time of the alleged incident. (*See* Exhibit A, ¶ 28). Plaintiff seeks to recover damages from Mr. Van Weelden under the doctrine of "respondeat superior." Under respondeat superior, an employer may be liable for acts committed by an employee within the scope of his employment. E.g. New Orleans, M., & C.R. Co. v. Hanning, 82 U.S. 649, 657 (1873).

Plaintiff's claims against Mr. Van Weelden fail to state claims for which relief may be granted for two reasons. First, plaintiff has not (and cannot) set forth any facts to support his assertion that Peter Hutchings was employed by the same corporate entity that employed Thomas Van Weelden. Second, plaintiff has set forth no statement of fact, only a baseless, conclusory assertion that Hutchings "was acting under the direction and control" of a corporate officer sitting in Arizona. Third, it is the corporate entity that

933210v1

employs Hutchings; not its corporate officers. It is common sense and black letter law that provides that a corporation, not a corporate officer, is the principal or employer for purposes of respondeat superior, and, thus, potentially subject to vicarious liability for torts committed by its employees or agents. Meyer v. Holley, 537 U.S. 280, 286(2003), citing 3A W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 1137, pp. 300-01 (rev. ed. 1991-1994). All of plaintiff's claims against Mr. Van Weelden, including his tort claims in Counts III, IV, V, VII and VIII and his civil rights claims in Counts I, II, and VI, must be dismissed for failure to state a claim for which relief may be granted.

## IV.  DEFENDANT HUTCHINGS' ALLEGED CONDUCT WAS PERFORMED OUTSIDE OF THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND THEREFORE, ALL OF PLAINTIFF'S CLAIMS AGAINST BFI SHOULD BE DISMISSED PURSUANT TO FED.R.CIV.P. 12(b)(6).

An employer may only be held vicariously liable for the intentional tort of an employee, if the tortious act was committed within the course and scope of employment, and in furtherance of the employer's work. Howard v. Town of Burlington, 399 Mass. 585 (1987); Miller v. Federated Dep't Stores, Inc., 364 Mass 340 (1973). To determine whether an employee's conduct is within the scope of his employment, the Supreme Judicial Court of Massachusetts has considered the following three factors: [1]whether the conduct at issue "is of the kind he is employed to perform, Douglas v. Holyoke Mach. Co., 233 Mass. 573, 576(1919); if it occurs substantially within the authorized time and space limits, Vallavanti v. Armour & Co., 260 Mass. 417, 419-20 (1927); and if it is motivated, at least in part, by a purpose to serve the employer, Donahue v. Vorenberg, 227 Mass. 1, 5(1917), McKeever v. Ratcliffe, 218 Mass. 17,20(1914). See Restatement

(Second) of Agency §228(1958)" <u>Wang Lab., Inc. v. Business Incentives, Inc.</u>, 398 Mass. 854, 859(1986).

In examining the third portion of the standard, whether the employee's challenged conduct is motivated, at least in part, by a purpose to serve his employer, the Courts have focused on the relationship between the plaintiff's activities and the frustration of the employee's present ability to perform his job duties. <u>Miller</u>, 364 Mass. at 349. If an employee's tortious conduct was in response to plaintiff's actions which were impeding the employee's ability to perform his duties, courts have generally found that the employee was acting within the scope of his employment. <u>Id</u>. However, if an employee "acts from purely personal motives...in no way connected with the employer's interest, he is considered in the ordinary case to have departed from his employment, and the master is not liable." W. Prosser & W. Keeton, Torts 506 (5th ed. 1984); <u>Manning v. Ross Grimsley</u>, 643 F.2d 20, 24 (1st Cir. 1981).

This issue of an employee's motivation in committing an intentional tort was squarely addressed by the Massachusetts Supreme Judicial Court in <u>Miller v. Federated Department Stores, Inc.</u>, 364 Mass. 340, 349-50 (1973). In <u>Miller</u>, a janitor punched the plaintiff customer at his employer's retail store after she had annoyed or insulted him by a comment that "if you would say 'excuse me', people could get out of your way." <u>Id</u>. at 342-43. The Court in <u>Miller</u> held that the defendant employee was not acting in the course of his employment when he struck the plaintiff as the plaintiff's conduct was not preventing the janitor from performing his duties. <u>See also</u> <u>Fairbanks v. Boston Storage Warehouse Co.</u>, 189 Mass. 419 (1905) (elevator operator that struck a customer who asked him to operate elevator acted outside scope of employment); <u>Brown v. Boston Ice</u>

Co., 178 Mass. 108 (1901) (employee of ice company struck a child with an axe handle to punish him for having broken an axe, which was employer's property acted outside scope of employment).

The Miller court reasoned the crucial inquiry in determining whether an employee is acting within the scope of his employment is whether the employee's intentional tort "was in response to the plaintiff's conduct which was presently interfering with the employee's ability to perform his duties successfully. This interference may be in the form of an affirmative attempt to prevent an employee from carrying out his assignments, as in the Levi and Rego cases, or in the failure to do acts necessary to enable the employee to begin or continue his assignments, as in the Hobart case." Miller, 364 Mass. at 350.

In the instant case, Hutchings' alleged conduct does not trigger vicarious liability. Wang Lab., 398 Mass. at 859; Worcester Ins. Co. v. Fells Acre Day School, 408 Mass. 393, 404 (1990). Hutchings allegedly stopped the truck he was driving on behalf of his employer and exited the truck. (See Exhibit "A" at ¶14) Plaintiff contends Hutchings grabbed his arm, threatened him and subsequently chased his vehicle. (See Exhibit "A" at ¶¶14, 16 and 18) Hutchings' conduct was obviously not the type of action he was employed to or trained to perform as a driver for a waste hauling company. See Wang Lab., 398 Mass. at 859; Worcester Ins. Co., 408 Mass. at 404; see also Mosko v. Raytheon Co., 416 Mass. 395, 399 (1993) (intoxicated manager driving home from party with co-employees not engaged in conduct of kind he was hired to perform).

Further, plaintiff's complaint does not set forth any factual allegations to suggest plaintiff's actions impeded Hutchings ability to perform his job as a truck driver. There

933210v1

are no factual claims to suggest that the fact that plaintiff caused a motor vehicle accident with an unrelated party or that plaintiff stopped after the motor vehicle accident had any impact on Hutchings' ability to perform his employment duties. Hutchings' alleged exit from the truck and confrontation with the plaintiff was not motivated by a purpose to serve his employer. See Wang Lab., Inc., 398 Mass. at 859.

Defendant, Browning Ferris Industries of North America (so-called) may not be held vicariously liable for Hutchings' alleged conduct because plaintiff's factual allegations demonstrate the claimed tortious acts were not committed within the scope of Hutching's employment or in furtherance of his work on behalf of his employer. Therefore, all of Beckley's claims against BFI, which are based solely on the theory of respondeat superior, should be dismissed for failure to state a claim upon which relief may be granted.

V.    **DEFENDANT GINO DUGGAN, A CO-EMPLOYEE OF PETER HUTCHINGS, MAY NOT BE HELD VICARIOUSLY LIABLE FOR HUTCHINGS' ALLEGED CONDUCT.**

Plaintiff alleges Defendant, Gino Duggan is a co-employee of Defendant, Peter Hutchings. All of plaintiff's claims against Defendant Gino Duggan are based on a theory of respondeat theory, whereby a principal or employer may be held vicariously liable for the acts of their agents or employees acting in the scope of their employment. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 756 (1988). As a co-employee of Peter Hutchings, Gino Duggan may not be held vicariously liable for Hutchings' alleged conduct. Therefore, all of plaintiff's claims against Gino Duggan should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

VI.    **PLAINTIFF'S CLAIMS FOR CIVIL RIGHTS VIOLATIONS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF**

**MAY BE GRANTED BECAUSE PETER HUTCHINGS DID NOT ACT
"UNDER COLOR OF STATE LAW."**

### A.    Defendant Hutchings' alleged conduct did not constitute state action.

In Counts I and VI of his complaint, Plaintiff Beckley asserts that Defendant

Hutchings' alleged actions, including "unlawfully and maliciously harassing" him and

"unlawfully and maliciously assaulting, threatening to kill and stalking him," violated his

civil rights pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment. Plaintiff's

claims of civil rights violations rest entirely on the unsubstantiated assertion that because

Hutchings'employer, Defendant Browning Ferris Industries of North America (so-

called)[7] had a contract with the City of Boston at the time of the alleged incident, all of

the defendants acted "under color of [state] law." See Exhibit A, . ¶4. Plaintiffs claims of

civil rights violations in Counts I and VI must fail because plaintiff has failed to allege

any facts demonstrating Defendant Hutchings' conduct constituted state action.[8]

42 U.S.C. §1983 creates liability against any person who violates the Constitution

or laws of the United States while acting "under color of any statute, ordinance,

regulation, custom or usage of any State or Territory." Because 42 U.S.C. §1983 does

not apply to private actions, in order to prove a valid cause of action in the instant case,

plaintiff must prove deprivation of a right through the actions of Hutchings, a private

individual employed by a private corporation, may be "fairly attributable to the State."

Lugar v. Edmondson Oil Co., 457 U.S. 922, 937(1982).

---

[7] Defendants deny that Hutchings was employed by Browning Ferris Industries of North America (so-called). However, for purposes of this argument, defendants set forth plaintiff's factual allegation.

[8] The "under color of state law" requirement of 42 U.S.C. §1983 and the state action requirement under the Federal Constitution are essentially the same and may be collapsed into a single state action analysis. Ponce v. Basketball Federation, 760 F.2d 375, 377, n.2 (1st Cir. 1985).

This Court has considered the following three-part inquiry to determine if a private defendant's conduct constituted a state action:

> (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; or (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state may be recognized as a joint participant in the challenged activity.
> Blum v. Yaretsky, 457 U.S. 991, 1004-05(1982); Tynecki v. Tufts University, 875

F.Supp. 26, 31 (D. Mass. 1994), quoting Citizens to End Animal Suffering v. Faneuil

Hall, 745 F. Supp. 65, 69 (D. Mass. 1990); Ponce v. Basketball Fed'n, 760 F.2d 375, 377

(1st. Cir. 1985).

Under the first portion of the inquiry, the "nexus/state compulsion test," a plaintiff can establish the presence of state action where 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Tynecki, 875 F.Supp. at 31; quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). "A State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004-1005.

Applying the "nexus/state compulsion test" in the instant case, Hutchings' alleged conduct did not arise out of his employment or the contract between the City of Boston and BFI. Further, plaintiff has not set forth any factual allegations to demonstrate that the City of Boston or any government entity encouraged, coerced or affirmatively induced Hutchings purported conduct. See Ponce, 760 F.2d at 378; Tynecki, 875 F.Supp. at 31; see also Rendell-Baker v. Kohn,, 457 U.S. 830 (1982).

The second part of the inquiry is whether the defendant was performing a public function that has been "traditionally the exclusive prerogative of the State." Jackson, 419 U.S. at 353. The Supreme Court analyzed the "public function test," in Rendell-Baker v. Kohn, 457 U.S. 830 (1982),. a 42 U.S.C. §1983 case brought by a former vocational counselor and teachers who claimed they were wrongfully discharged from a privately operated school for maladjusted high school students. Most of the students at the school were referred to the school by city school committees, who then paid for the students education. Rendell-Baker, 457 U.S. at 832. The high school also received funds from a number of state and federal agencies. Id. The court noted that public funds accounted for at least 90% of the school's operating budget. Id.

The Rendell-Baker Court held that the respondent school did not act under color of state law when it discharged the petitioner employees, reasoning that the school's receipt of public funds does not make the discharge decisions acts of the State. Id. at 843. Although the education of maladjusted high school students is a public function for which the state intends to provide services at the public expense, the Rendell-Baker court concluded "[t]hat a private entity performs a function which serves the public does not make its acts state action." Id. at 842; see also Blum, 457 U.S. at 1005.

In the instant case, Hutchings' alleged actions do not arise out of his employment. However, even if this Court were to find that his actions arose out of his employment, his actions as a driver for his employer would not become acts of the City of Boston by performance of his duties.

The final inquiry is "the symbiotic relationship test". Under this test, the actions of a private party constitute state action "only where the State 'has so far insinuated itself

933210v1

into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.'" <u>Citizens to End Animal Suffering</u>, 745 F. Supp. at 72, quoting <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 725(1961). "To survive a motion to dismiss, plaintiffs must plead the 'relationship or nature of cooperation between the state and a private individual... in some detail.'" <u>Varrassio Construction v. DiFazio</u>, 1989 U.S. Dist. LEXIS 9990, 4-5.

As is argued in detail above, Plaintiff has not (and cannot) allege Defendant Hutchings and the City of Boston to be joint participants in this incident. Plaintiff's claims of civil rights violations against all of the Defendants in Counts I and VI should be dismissed because plaintiff has failed to allege the requisite facts to demonstrate Defendant Hutching's conduct constituted state action.

B. **Defendant Gino Dugan, Hutchings supervisor, cannot be held vicariously liable for civil rights violations under a respondeat superior theory.**

The §1983 claims against Defendant Gino Dugan are based solely on his role as Hutchings supervisor. Mr. Dugan's supervisory role is an insufficient ground for holding him liable for any of the alleged civil rights violations which may have been committed by Hutchings[9]; and plaintiff must demonstrate that Mr. Dugan was actually involved in the alleged civil rights violations. <u>See</u> <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690-695 (1978); <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581-82 (1st Cir. 1994); <u>Bowen v. Manchester</u>, 966 F.2d 13, 20 (1st Cir. 1992).

To impose liability upon a supervisor for a subordinate's civil rights violation, a plaintiff must first establish that the supervisor's "acts or omissions...amount to a reckless or callous indifference to the constitutional rights of others." <u>Febus-Rodriguez v.</u>

---

[9] Defendants deny Hutchings' alleged actions constituted state action.

Betancourt-Lebron, 14 F.3d 87, 92(1st Cir. 1994); Duran v. Duval, 1998 U.S. Dist LEXIS 17431.  Second, a plaintiff is required to "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." Maldonado-Denis, 23 F.3d at 582; Febus-Rodriguez, 14 F.3d at 92.

In the instant action, Peter Hutchings' alleged conduct did not constitute state action.  However, even if this Court were to find that Hutchings was acting under the color of state law, the mere fact that Mr. Dugan supervised Peter Hutchings is an insufficient basis for holding him liable to the plaintiff under §1983.  Plaintiff has neither alleged nor established the involvement of Mr. Dugan in the alleged civil rights violations.  Since there are no factual allegations of any direct involvement by Mr. Dugan in the civil rights violations alleged by the plaintiff, Beckley's claims against Mr. Dugan in Counts I and VI should be dismissed.

C.    **Defendant Browning Ferris Industries of North America (so-called) can not be held vicariously liable for civil rights violations under a respondeat superior theory.**

The §1983 claims against Defendant Browning Ferris Industries of North America (so-called) are based solely on its alleged role as Hutchings' employer. Defendant BFI' s role as employer is an insufficient ground for holding it liable for any of the alleged civil rights violations which may have been committed by others; it must be shown to have been actually involved in the alleged civil rights violations. Monell, 436 U.S. at 690-95; Maldonado-Denis, 23 F.3d at 581-82; Bowen v. Manchester, 966 F.2d at 20.  Since plaintiff has not alleged any facts to support a claim of  BFI's direct involvement in the civil rights violations alleged by the plaintiff, Beckley's claim of deliberate indifference as to this defendant must fail.  The fact that BFI allegedly

17

employed Peter Hutchings does not make it liable under Section 1983, and therefore, plaintiff's claims against Defendant BFI in Counts I and VI should be dismissed for failure to state a claim for which relief may be granted.

## VII.    CONCLUSION

For the foregoing reasons, **Defendant Thomas H. Van Weelden** (incorrectly named in the Plaintiff's complaint as "Thomas H. Van Weelen"), respectfully moves this Honorable Court to dismiss **all of plaintiff's claims (Counts I-VIII)** against him pursuant to Fed. R. Civ P. 12(b)(2) and 12(b)(6). **Defendants, Browning Ferris Industries of North America (so-called) and Gino Dugan,** move to dismiss **all claims (Counts I-VIII)** against them pursuant to Fed. R. Civ P. 12(b)(6). **Defendant Peter Hutchings** moves to dismiss **Counts I** and **VI** against him and has answered the remaining claims (Counts II, III, IV, V, VII and VIII) against him.

Defendants,
**Browning Ferris Industries ("BFI") of North America,**
**Thomas H. Van Weelden,**
**Peter Hutchings and**
**Gino Dugan**
By their Attorneys,

I certify that this document has been served upon all counsel of record in compliance with the F.R.C.P.

_Lee M Chen_

_Lee M Che_
Lee Stephen MacPhee BBO#312400
Shannon M. Lynch BBO #630943
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210
(617) 439-7500

933210v1